Cooke, J.
The People appeal from an order of the Appellate Term which affirmed a Criminal Court order granting, after hearing, defendant’s suppression motion regarding certain physical evidence, on the ground of lack of probable cause.
On October 5, 1973, Gervasi, a New York City patrolman assigned to the Special Narcotics Enforcement Unit, was in the vicinity of 118th Street and Seventh Avenue looking for a person arrested several months earlier while in possession of a sizable quantity of heroin. While using an 8 to 25 power by 30 millimeter lens telescope, he observed defendant and James Johnson, neither of whom he had seen before, engage in a brief conversation. Johnson then handed defendant a glassine envelope, about one and a half inches wide by two and a half inches long. There is no proof of the distance separating said officer and defendant or of the telescopic power employed.
Gervasi at first testified that "[t]he envelope appeared white. I couldn’t ascertain what was inside the envelope.” Then came this interrogation:
"The Court: Were you able to ascertain that there was something inside the envelope?
"The Witness: I said that the envelope appeared white. I could not tell what was inside the envelope.
"The Court: You testified that it was a glassine envelope. * * *
"The Court: A glassine envelope is not white, isn’t that correct?
"The Witness: That is correct, Your Honor. When you fold the glassine envelope, sometimes it may appear to be white.”
*384 The record also reveals this questioning:
"Q. Would you describe to the Court how she held it in her hand? A. After she had accepted the envelope, she took a quick look at it and closed her hand tight.
"Mr. Mendelsohn: I object. He is not in a position to testify, whether she closed her hand tight or not.
"The Court: Was her hand closed?
"The Witness: Her hand was closed.
"The Court: In what position?
"The Witness: A closed fist.”
The officer also testified that the general area of this occurrence was a known narcotics location.
Probable cause exists if the facts and circumstances known to the arresting officer warrant a prudent man in believing that the offense has been committed (Henry v United States, 361 US 98, 102; Brinegar v United States, 338 US 160, 175-176). The question of probable cause is a mixed question of law and fact: the truth and existence of the facts and circumstances bearing on the issue being a question of fact, and the determination of whether the facts and circumstances found to exist and to be true constitute probable cause being a question of law (Director Gen. v Kastenbaum, 263 US 25, 28; Worthington v United States, 166 F2d 557, 564; Cooper v United States, 16 F2d 830, 831; 6 C.J.S., Arrest, § 6, pp 598-599; 75 Am Jur 2d, Trial, § 360; cf. Stewart v Sonnenborn, 98 US 187, 194; Fagnan v Knox, 66 NY 525, 527; Besson v Southard, 10 NY 236, 240; McCormick v Sisson, 7 Cow 715, 717; 87 ALR 2d 183, 188-189; see People v De Sisto, 27 Misc 2d 217, 241, revd on other grounds sub nom. People v Lo Cicero, 17 AD2d 31, mod 14 NY2d 374). If the facts and circumstances adduced as proof of probable cause are controverted so that conflicting evidence is to be weighed, if different persons might reasonably draw opposing inferences therefrom, or if the credibility of witnesses is to be passed upon, issues as to the existence or truth of those facts and circumstances are to be passed upon as a question of fact; however, when the facts and circumstances are undisputed, when only one inference can reasonably be drawn therefrom and when there is no problem as to credibility, or when certain facts and circumstances have been found to exist, the issue as to whether they amount to probable cause is a question of law (Fagnan v *385 Knox, supra, p 527; Besson v Southard, supra, p 240; Richardson, Evidence [Prince—10th ed], § 118).
The detailed opinion of the Criminal Court (see CPL 710.60, subd 6) stated that "there are no other circumstances or suspicious activity in this case [other than the mere passing of a glassine envelope] which provide the requisite probable cause.” It was also held: "While on a stakeout for a known narcotics dealer, the police officer happened to notice the passing of a glassine envelope, the contents of which he could not see, between Johnson and the defendant, neither of whom he knew. This is, without more, simply insufficient to constitute probable cause. The fact that the neighborhood here might have a high crime rate is totally irrelevant”. Thus, it is clear that said court did not credit or accept the proof regarding the quick look or the ambiguous testimony concerning defendant’s closing of her hand tightly or that the envelope appeared white—all part of the fact-finding process. Appellate Term, in affirming, rendered no opinion.
Concededly, the incidence of a high crime rate is a relevant circumstance to be considered in determining the existence of probable cause (see People v Brown, 32 NY2d 172, 174; People v Hunter, 30 NY2d 774, 776; People v Rivera, 14 NY2d 441, 445). However, the reviewing court will pay substantial deference to judicial determinations of probable cause (cf. Aguilar v Texas, 378 US 108, 111), and, in the instant matter, the mere passing of a glassine envelope in a neighborhood in which narcotics were known to have been present, unsupplemented by any additional relevant behavior or circumstances found to exist, was insufficient to raise the level of inference from suspicion to probable cause (cf. People v Russell, 34 NY2d 261, 264; People v Brown, 32 NY2d 172, 174). In People v Brown (24 NY2d 421, 423), where the arrest was based on "a high crime area, a suspected narcotic addict, a meeting, parting, return, and movement of hands”, there was found to be a lack of probable cause. In People v Corrado (22 NY2d 308), there was a tip from an undercover policeman that marijuana would be present at a given time and place, defendants appeared in a car at said location at about said time, one of them left their car and walked to a second vehicle where he bent down for a few seconds and then returned to his companions in the first car where he was observed passing four opaque, manila envelopes to the driver. Despite these observations and testimony by a detective, experienced in narcotics, *386 that he had never seen loose marijuana in small quantities passed or sold in envelopes other than in the type involved here, probable cause was found to be lacking.
The situation found here is distinguishable from that present in People v Quinones (33 NY2d 811), relied on by the prosecution. There, the officer, found to be qualified as a narcotics expert, was only three feet away when 10 glassine envelopes were handed by defendant to Cameron. Previously, Cameron approached a group of men standing on a street, spoke to them, they shook their heads and he proceeded back up the street where he spoke to defendant and a woman, before the envelopes were transmitted.
On this appeal this court has no power to review questions of fact (People v Leonti, 18 NY2d 384, 390; People v Lobel, 298 NY 243, 251; People v Yui Kui Chu, 273 NY 191, 199; Cohen and Karger, Powers of the New York Court of Appeals [rev ed], § 198, p 742). Under the process outlined and applied herein, had the Criminal Court, grounded on different inferences or dissimilar credibility considerations, properly made other findings of fact indicating additional bases for probable cause and had its order, in turn, been affirmed by the Appellate Term, this court would be required to review as a question of law whether such facts as then found were sufficient to constitute probable cause.
The order of the Appellate Term should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order affirmed.