Cooke, J.
(dissenting). I dissent and vote to reverse. The facts are not in dispute. What is in question is whether some of those facts were improperly considered and employed by the court as the basis of its finding of probable cause.
Probable cause exists if the facts and circumstances known to the arresting officer warrant a prudent man in believing that an offense has been committed (Henry v United States, 361 US 98, 102; Brinegar v United States, 338 US 160, 175-176). It has been held that the question of probable cause is a mixed question of law and fact, the truth and existence of the facts and circumstances being a factual question and the determination that such facts and circumstances constitute probable cause being a question of law (Director Gen. v Kastenbaum, 263 US 25, 28; Worthington v United States, 166 F2d 557, 564; Cooper v United States, 16 F2d 830, 831; 6 CJS, Arrest, § 6, pp 598-599; 75 Am Jur 2d, Trial, § 360; cf. Stewart v Sonneborn, 98 US 187, 194; Fagnan v Knox, 66 NY 525, 527; Besson v Southard, 10 NY 236, 240; McCormick v Sisson, 7 Cow 715, 717; 87 ALR2d 183, 188-189; see People v De Sisto, 27 Misc 2d 217, 241, revd on other grounds sub nom. People v Lo Cicero, 17 AD2d 31, mod 14 NY2d 374).
Knowledge of those facts and circumstances which formed the basis of the belief that an offense has been committed must have rested within the officer’s mind at the time he restrained defendant. The testimony of the arresting officer should be reviewed to determine the actual order in which the events occurred. On direct examination, Officer Best testified: *205 "I saw the defendant, Leon Alexander, leaning against an automobile, with his right hand cupped, with a quantity of glassine envelopes in that same hand. * * * He was to the curb side. * * * He had his back to me. * * * I got out of the automobile. I asked the officers to stop immediately. I got out of the automobile. As I was getting out of the automobile the defendant glanced towards me. * * * As the defendant looked in my direction I called out a name and looked up towards the second story window, as if someone had called to me. When I did this, to my knowledge the defendant froze. The defendant froze and I was able to get up on the defendant and place both hands about his wrist. Prior to me getting to place both hands on his wrist, almost simultaneously the defendant dropped or intentionally dropped * * * a quantity of glassine envelopes to the ground.”
On cross-examination the following exchange took place:
"Q. Then what did you do when you grabbed him by both wrists? A. The defendant had dropped some of — the amount of glassine envelopes to the ground.
"Q. He dropped them? A. Yes.
"Q. At what point did he drop them? Before or after you grabbed his wrists? A. About simultaneous, I guess.
"Q. Simultaneously? A. About. Almost.
"Q. Did he drop them involuntarily as you grabbed his wrists or did he try to get rid of them? A. I think he tried to get rid of them.
"Q. He tried to get rid of them? A. Yes.
"Q. How did he try to get rid of them?
"THE COURT: Show us.
(The witness demonstrates)
"THE COURT: Opening his fist, indicating.”
There is additional testimony in the record on the issue of whether the officer’s recorded notation that defendant "threw” the glassine envelopes conflicted with his in-court statement that defendant "dropped” them. But all such testimony and the findings of fact based thereon relate to that which happened "almost simultaneously” with the officer placing both his hands on defendant’s wrist. An act of the defendant at that time, and the officer’s perception thereof, cannot be included among those facts and circumstances used as a basis for the finding of probable cause. Only those facts and circum *206 stances which were found to have occurred prior thereto may be considered. Thus, the only factors which could have been considered are the experience of the officer and the view he had of the packet of glassine envelopes cupped in defendant’s hand as the officer rode by in a moving vehicle. Although glassine envelopes have come to be accepted as a "telltale sign of heroin”, this court has declared on numerous, occasions that the mere possession or passing of such envelopes does not, without more, establish probable cause (e.g., People v Corrado, 22 NY2d 308, 313). To the possession of glassine envelopes there was no supplementation by any additional behavior raising the level of inference from suspicion to probable cause (People v Russell, 34 NY2d 261, 264; People v Brown, 32 NY2d 172, 174; People v Brown, 24 NY2d 421, 423; People v Corrado, supra). As a matter of law, the facts and circumstances known to the officer at the time he grabbed defendant’s wrist were insufficient to constitute probable cause.
Chief Judge Breitel and Judges Jasen, Jones and Wachtler concur with Judge Gabrielli; Judge Cooke dissents and votes to reverse in a separate opinion in which Judge Fuchs-berg concurs.
Order affirmed.